[No. 39428.    Department One.    June 19, 1969.]

JUDY A. RIKSTAD, *Individually and as Administratrix, Appellant,* v. ERNEST HOLMBERG et al., *Respondents.*\*

*Edwin R. Johnson,* for appellant.

*Davies, Pearson, Anderson, Pearson & Gadbow,* by *Wayne J. Davies,* for respondents.

WEAVER, J.—Plaintiff, for her benefit and for the benefit of four surviving children of her deceased husband, brings

*Reported in 456 P.2d 355.

266

this action for damages for the alleged wrongful death of her husband. Plaintiff appeals from an order dismissing her action with prejudice entered after the trial court had sustained a challenge to the sufficiency of plaintiff's evidence.

■ At the outset, we are aware of the oft-quoted rule that a challenge to the sufficiency of the evidence at the end of plaintiff's case admits the truth of the evidence and all the inferences that can reasonably be drawn therefrom. It requires that the trial court, and this court upon appeal, interpret the evidence most strongly against defendant and most favorably for plaintiff. *Smith v. B & I Sales Co.*, 74 Wn.2d 151, 443 P.2d 819 (1968); *Holland v. Columbia Irr. Dist.*, 75 Wn.2d 302, 450 P.2d 488 (1969).

From this, it is apparent that where there are justifiable inferences from the evidence upon which reasonable minds might reach different conclusions, the questions are for the jury to decide.

Plaintiff's husband died as a result of having been run over by a pickup truck driven by defendant. The accident occurred on July 4, 1965, between 10 and 11 p.m., at the campsite of three families.

The campsite, located in a field adjacent to a bridge over the Clearwater River, was not an established camping ground. Much of the field, shown to be of irregular terrain, was, for the most part, covered with tall grass, blackberry bushes, and alder saplings. The camp area was reached by driving across the field. Although a road had not been built, continual ingress and egress of cars and pickup trucks of campers had resulted in the establishment of a semblance of a roadway across the field. The ruts "where the tracks were" had been used by defendant and others in approaching the campsite on July 3 and 4. The lane was devoid of high grass, bushes, and saplings and showed that automobiles had used it.

Decedent and defendant, in the company of others, visited their friends at the camp on July 3. There is evidence, which a jury would be entitled to believe, that both defend-

ant and decedent drank considerable liquor on July 3 and that decedent had little sleep that night.

Defendant and decedent returned to the camp in the late afternoon or early evening of July 4. The drinking continued. While defendant helped one of the campers fix a shelter tarp for the night, decedent, with others, was standing close to the campfire. Decedent was waving a bottle and asked defendant to join him for a drink.

Between 10 and 11 p.m., defendant decided he and decedent should return to their cabin in Clearwater, Washington, about 8 or 10 miles away. When defendant did not see decedent, he yelled for him three or four times and blew the air horn on his pickup two or three times. A Mr. Olson, one of the campers, testified that "5 minutes or so" before the accident he told defendant that he had seen decedent 10 to 15 feet from the campfire toward the main highway—not the route used in crossing the field to the campsite.

Not finding decedent, defendant entered his truck. He did not attempt to turn the truck so that he could retrace the route by which he had approached the campsite, but pulled up alongside the campfire, a distance of 10 or 12 feet, stopped, and asked if anyone had seen decedent. Receiving a negative reply, defendant proceeded forward slowly in low gear, with the truck lights on high beam so that they did not light the ground immediately in front of the truck.

Defendant's route was not over the established roadway by which all cars had approached the camp. Instead, defendant undertook to drive across the open field close to the camp. The route he proposed to take showed no signs of previous traffic. The terrain was irregular; the grass was high; bushes and saplings were scattered in the vicinity.

Defendant testified that his objective was an old dirt road, paralleling the public highway, that would have taken him to the bridge over the river. He thought decedent was at the bridge. It developed at trial, however, that the old road had been blocked by a pile of dirt to prevent traffic over it. Having proceeded about 25 feet, he ran over

.decedent, who was lying in a depression where the grass was knee high.

An autopsy showed that decedent had an alcohol blood content of 0.24. The autopsy surgeon testified that, in his opinion, decedent "was out cold. He had passed out."

It must be kept in mind that we are considering only one question: Should a challenge have been sustained to the sufficiency of plaintiff's evidence, or should the case have been submitted to the jury?

■ Plaintiff's evidence must demonstrate that (1) there is a statutory or common-law rule that imposes a *duty* upon defendant to refrain from the complained-of conduct and that is designed to protect the plaintiff against harm of the general type; (2) the defendant's conduct violated the duty; and (3) there was a sufficiently close, actual, causal connection between defendant's conduct and the actual damage suffered by plaintiff. *O'Donoghue v. Riggs,* 73 Wn.2d 814, 440 P.2d 823 (1968); *McLeod v. Grant County School Dist.,* 42 Wn.2d 316, 255 P.2d 360 (1953); *Foreseeability as an element of negligence and proximate cause,* Annot., 100 A.L.R.2d 942, 997 (1966).

The trial court, in sustaining a challenge to the sufficiency of plaintiff's evidence, held, as a matter of law, that a reasonable man would not have foreseen that decedent was asleep in the grass; hence, defendant's conduct was not the proximate cause of the accident.

■ The better considered authorities do not regard foreseeability as the handmaiden of proximate cause. To connect them leads to too many false premises and confusing conclusions. Foreseeability is, rather, one of the elements of negligence; it is more appropriately attached to the issues whether defendant owed plaintiff a duty, and, if so, whether the duty imposed by the risk embraces that conduct which resulted in injury to plaintiff. The hazard that brought about or assisted in bringing about the result must be among the hazards to be perceived reasonably and with respect to which defendant's conduct was negligent. *See* Restatement (Second) of Torts § 435 comment *c*

(1965). In *Fleming v. Seattle*, 45 Wn.2d 477, 275 P.2d 904 (1954), the case was submitted to the jury. On appeal this court said: "The actual harm sustained by decedent fell within this general field of danger."

It is the misuse of foreseeability—that is, discussion of the improbable nature of the accident in relation to proximate cause—that led the trial judge, in the instant case, to conclude that the challenge should be sustained.

It is not, however, the unusualness of the act that resulted in injury to plaintiff that is the test of foreseeability, but whether the result of the act is within the ambit of the hazards covered by the duty imposed upon defendant.

We approved this theory in *McLeod v. Grant County School Dist.*, 42 Wn.2d 316, 255 P.2d 360 (1953), in which this court said:

Whether foreseeability is being considered from the standpoint of negligence or proximate cause, the pertinent inquiry is not whether the actual harm was of a particular kind which was expectable. Rather, the question is whether the actual harm fell within a general field of danger which should have been anticipated. *Berglund v. Spokane County, supra*; [4 Wn.2d 309, 103 P.2d 355] Harper, Law of Torts, 14, § 7; 2 Restatement, Torts, 1173, § 435. This thought is further developed in the following statement by Professor Harper, which we quoted with approval in the *Berglund* case:

"The courts are perfectly accurate in declaring that there can be no liability where the harm is unforeseeable, if 'foreseeability' refers to the general type of harm sustained. It is literally true that there is no liability for damage that falls entirely outside the general threat of harm which made the conduct of the actor negligent. The sequence of events, of course, need not be foreseeable. The manner in which the risk culminates in harm may be unusual, improbable and highly unexpectable, from the point of view of the actor at the time of his conduct. And yet, if the harm suffered falls within the general danger area, there may be liability, provided other requisites of legal causation are present."

Of course, as one commentator pointed out,

no negligent act threatens all imaginable harms; unreasonably dangerous conduct is dangerous because it

threatens particular kinds of harms to particular kinds of persons in particular ways; responsibility should follow the pattern of the risk. Morris: *Duty, Negligence and Causation,* 101 U. of Pa. L. Rev. 189, 204 (1952).

Defendant was subject to the duty of operating his pickup truck in such a manner and in such circumstances that it would not result in injury to others. Under the facts of the instant case, reasonable minds can well differ on the question of whether decedent's death was within the foreseeable scope of the risks arising from this duty. The jury may decide that decedent was beyond the apparent scope of danger from defendant's conduct, and so beyond the scope of the hazards arising from the duty imposed upon defendants. In *McLeod, supra,* this court said:

> We have held that it is for the jury to decide whether the general field of danger should have been anticipated . . . [by defendant].

*See Avedisian v. Admiral Realty Corp.,* 63 N.J. Super 129, 164 A.2d 188 (1960).

We find no error in the court's exclusion of certain photographs taken of the area in which the accident occurred. The photographs were taken more than a year after the accident, under different seasonal conditions. The trial court did not abuse its discretion. *Mason v. Bon Marche Corp.,* 64 Wn.2d 177, 390 P.2d 997 (1964).

The judgment of dismissal is reversed and the case remanded for further proceedings not inconsistent with this opinion.

It is so ordered.

HILL, HALE, and McGOVERN, JJ., and GAINES, J. Pro Tem., concur.